**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| Tammi Coakley-Simelton )<br>13806 Churchville Drive )<br>Upper Marlboro, MD  20738 )<br> )<br>        Plaintiff, )<br> )<br>    v.   )<br> )<br> )<br> )<br> )<br> )<br>Georgetown University )<br>3700 O Street, NW )<br>Washington, DC 20005 )<br> )<br>Annamarie Bianco, Associate Vice President )<br>and University Registrar, Georgetown University, )<br>in her official and individual capacity )<br>3700 O Street, NW )<br>Washington, DC 20005 )<br> )<br>Laura Soerensson, Associate University Registrar )<br>for Enrollment Management and Registration, )<br>Georgetown University, in her official and )<br>individual capacity )<br>3700 O Street, NW )<br>Washington, DC 20005 and )<br> )<br>Wallace Michael Canter, Associate Dean, )<br>Academic Operations, School of Continuing Studies )<br>Georgetown University, in his official and )<br>individual capacity )<br>3700 O Street, NW )<br>Washington, DC 20005 )<br> )<br>        Defendants )<br> )<br> ) | **CASE NO:** _____<br><br>**JUDGE**_____<br><br>**MAGISTRATE JUDGE**_____<br><br><br><br>**COMPLAINT AND
JURY DEMAND** |

NOW COMES, Plaintiff Tammi Coakley-Simelton ("Plaintiff"), by and through her

undersigned counsel, and, before this Court, brings this Complaint, both collectively and

individually, against Defendants Georgetown University ("Georgetown"), Annamarie Bianco ("Bianco"), Laura Soerensson ("Soerensson") and Wallace Michael Canter ("Canter") (all individual Defendants are collectively referred to herein as the "Defendants"), alleging as follows:

## PARTIES

1.       Plaintiff is a United States citizen and African-American female currently residing in Riverdale, Maryland. At all times relevant to this action, Plaintiff has been and remains a current employee of Defendant Georgetown University.

2.       Defendant Georgetown is a private educational institution with its principal place of business in the District of Columbia and located at 37th and O Streets. At all times relevant to this action, Defendant Georgetown has been and remains Plaintiff's current employer.

3.       Upon information and belief, Defendant Bianco is a United States citizen and Caucasian female currently residing in Catharpin, Virginia. During the times identified herein, Defendant Bianco has been employed by Defendant Georgetown and is currently employed as Georgetown's Associate Vice-President and University Registrar.

4.       Upon information and belief, Defendant Soerensson is a United States citizen and Caucasian female currently residing in the District of Columbia. During the times identified herein, Defendant Soerensson has been employed by Defendant Georgetown and is currently employed as Georgetown's Associate University Registrar for Enrollment Management and Registration.

5.       Upon information and belief, Defendant Canter is a United States citizen and Caucasian male currently residing in Alexandria, Virginia. During the times identified herein, Defendant Canter has been employed by Defendant Georgetown and is currently employed as Georgetown's Associate Dean, Academic Operations, School of Continuing Studies.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because this case arises, in part, under the laws of the United States.

7.      Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Plaintiff's claims under District of Columbia common or statutory law, including Plaintiff's claims under the District of Columbia Human Rights Act of 1977, because such claims form part of the same controversy and derive from the same set of facts.

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the acts, events and omissions on which Plaintiff's claims are based occurred within the District of Columbia.

## NATURE OF THE CASE

9.      By this action, Plaintiff states that Defendants, both individually and collectively, discriminated and/or retaliated against her in the terms and condition of her employment in violation of Title VII of the Civil Rights Act of 1964, 42. U.S.C. § 2000e, *et. seq.* ("Title VII") and the District of Columbia Human Rights Act of 1977 ("DCHRA"). The unequal, discriminatory and retaliatory treatment endured by Plaintiff includes, among other incidents: (1) the denial of Plaintiff's requests for additional subordinate support to assist Plaintiff in managing a voluminous and ever increasing workload; (b) the unjust removal of Plaintiff's job responsibilities and the reassignment of those tasks to lesser qualified and newly-promoted Caucasian employees; (c) Defendants' directives that Plaintiff would be expected to train and "de-facto" manage these lesser qualified and newly-promoted Caucasian employees without appropriate recompense; (d) the denial of multiple opportunities for either promotion or reassignment into positions for which Plaintiff was more than qualified; (e) the denial of compensation and/or pay increases commensurate with Plaintiff's

3

professional experience and assigned workload; (f) unwarranted and retaliatory disciplinary action and negative performance evaluations by current department leadership; (g) reassignment to a workspace that was insufficient to allow Plaintiff to work on her assigned tasks and was also isolated from Plaintiff's Caucasian colleagues; (h) discouragement and implied threats about her continued employment by both University leadership and Human Resources when pursuing her concerns about unequal and discriminatory treatment; (i) demotion to a lesser position within Georgetown's Office of the University Registrar; and (j) continuous retaliatory behavior in the form of overwhelming workloads, unwarranted disciplinary action and performance evaluations and denial of increased compensation and career advancement opportunities as a result of Plaintiff's previous filing of internal and external complaints about discrimination, hostile work environment and disparate treatment.

10.     Plaintiff's claims for discrimination and/or retaliation against Defendants are based on the continuing violations doctrine.

## FACTUAL ALLEGATIONS

11.     In September 2013, Plaintiff began her employment with Defendant Georgetown when hired into the Associate Director for Student Records & Accounts position.

12.     As Associate Director for Student Records & Accounts, Plaintiff was an employee of the University's Office of the Registrar ("OUR").

13.     In this role, Plaintiff also served as a point of contact for Georgetown's School of Continuing Studies ("SCS") and was responsible for providing registration and student account related services to the SCS' credit-based student population and its credit-based program staff members. Although Plaintiff's salary was derived from the SCS' budget, Plaintiff was not an SCS employee.

14.     The amount of work required of Plaintiff as the Associate Director for Student Records & Accounts was both substantial and voluminous.

15.     Despite Plaintiff's having sole responsibility for an already sizeable workload, OUR leadership tasked Plaintiff with assuming the responsibility for approximately 85% of the assigned responsibilities of a departing OUR employee. OUR's decision in this regard resulted in Plaintiff singlehandedly performing the role of two (2) full-time University employees.

16.     Plaintiff did not receive any additional compensation or subordinate employee assistance after the above-referenced increase of her responsibilities.

17.     Conversely, Plaintiff's lesser qualified Caucasian counterpart did receive increased compensation when he assumed the remaining 15% of the former OUR employee's responsibilities.

18.     Although Plaintiff repeatedly requested increased compensation and subordinate assistance commensurate with her assigned duties and workload, Plaintiff's requests were regularly denied by Defendants.

19.     In addition to denying Plaintiff's requests for a pay increase and subordinate assistance, Defendant Georgetown, by and through its agents, also engaged in purposeful retaliatory conduct against Plaintiff. Such conduct was designed to prevent Plaintiff from effectively performing her job and commenced immediately after Plaintiff's 2014 and 2015 internal and external complaints of discrimination, hostile work environment, abuse of power, disparate treatment and collusion against specified OUR and SCS employees, including Defendant Canter.

20.     As a result of filing her former discrimination complaints, Plaintiff, to this day, continues to experience retaliatory conduct by Defendant Georgetown and its agents. This retaliatory behavior manifests itself in the form of overwhelming work assignments that are simply unmanageable by one individual; unwarranted corrective action; the denial of promotions and/or

reassignments into other University departments; and the denial of pay increases that would be commensurate with Plaintiff's professional experience and workload.

21.     Rather than provide Plaintiff with increased compensation and employee subordinate assistance, Defendant Georgetown, by and through its agents, penalized Plaintiff by removing many of Plaintiff's duties as Associate Director for Student Records & Accounts and allocating those tasks to Caucasian employees. Defendant Georgetown, by and through its various agents, has engaged in this pattern and practice of discriminatory/retaliatory conduct from 2015 to the present.

22.     Each time Defendant Georgetown removed one of the essential elements of Plaintiff's position, the University promoted a lesser qualified Caucasian employee to assume that function. Defendant Georgetown also provided each of these newly-promoted Caucasian employees with a salary increase and/or subordinate employee assistance. Defendant Georgetown, by and through its various agents, has engaged in this pattern and practice of discriminatory/retaliatory conduct from 2015 to the present.

23.     In addition to performing her current responsibilities as Associate Director of Student Records & Accounts, Plaintiff was also required to train these newly-promoted Caucasian employees.

24.     Each of these newly-promoted Caucasian employees has lesser educational qualifications and professional experience than Plaintiff.

25.     In the latter half of 2017, Plaintiff gave a presentation to Defendant Bianco and other OUR employees regarding the nature and scope of Plaintiff's work as Associate Director for Student Records & Accounts.

26.     During that presentation, Plaintiff demonstrated the massive growth in the student population that Plaintiff serviced and subsequently asked Defendant Bianco for promotion, increased

compensation and subordinate employee assistance.

27.     Defendant Bianco denied Plaintiff's requests and informed Plaintiff that there would be no changes within the OUR Department.

28.     After denying Plaintiff's requests for promotion and increased compensation, Defendant Bianco immediately promoted three (3) Caucasian OUR employees while Plaintiff continued to manage her assigned duties by working a 7-day work week and 14-hour days, without recognition, promotion or appropriate recompense. Upon information and belief, each of the promoted Caucasian employees received a salary increase approved by Defendant Bianco.

29.     Because Plaintiff's salary is derived from the SCS' budget, Plaintiff also gave a similar presentation to Defendant Canter and other SCS senior staff. In this presentation, Plaintiff explained that she was performing the work of two (2) full-time employees and reiterated her request for increased compensation and subordinate assistance.

30.     Defendant Canter denied Plaintiff's requests and instead reassigned Plaintiff's duties to other Caucasian SCS employees. These Caucasian SCS employees were not proficient in Plaintiff's assigned duties and responsibilities.

31.     Defendant Canter also instructed Plaintiff to train Caucasian SCS employees on the work Plaintiff performed for SCS. Defendant Canter communicated this directive to Plaintiff under the guise that all employees working on records and registration matters would receive cross-training on protocols for records/registrations for all Schools within the University system.

32.     Despite Defendant Canter's explanation, Plaintiff has not received any dedicated training on the records/registration protocols for other Schools within the University. However, Plaintiff has been forced to continue training her lesser qualified Caucasian SCS colleagues.

33.     Plaintiff has also been purposefully excluded from several trainings and/or meetings

that Defendant Canter has organized with Plaintiff's Caucasian colleagues.

34.     Defendant Canter also continues to negatively impact Plaintiff's performance and career advancement.

35.     For example, even though there are procedural guidelines that explicitly detail the manner in which transactions should be forwarded for processing, SCS staff, under the direction of Defendant Canter, routinely disregards these protocols and forwards said transactions to Plaintiff's attention when it is clearly known that submitting said transactions directly to Plaintiff will cause undue delay in their processing. Defendant Canter and SCS staff then complain to OUR about any transactional delays and cite Plaintiff's inability to timely process these transactions as evidence of Plaintiff's purported ineffectiveness in her role.

36.     Defendant Canter was aware of and also displeased with Plaintiff's previous decision to raise allegations of disparate treatment and hostile work environment against him and his SCS colleagues.

37.     Defendant Canter's conduct towards Plaintiff constitutes a continuing pattern and practice of discriminatory and retaliatory behavior—a pattern which continues to the present day.

38.     In February 2018, OUR physically moved its operations to another on-campus location.

39.     After OUR's move, Defendant Bianco informed Plaintiff that there was no physical space to accommodate Plaintiff—a full-time OUR employee—and her work.

40.     Defendant Bianco made these representations to Plaintiff despite the fact that OUR's new location had sufficient space for student work-study employees and a newly hired Caucasian OUR employee.

41.     After receiving Plaintiff's numerous complaints about the lack of a physical

workspace, Defendant Bianco relented and found a cubicle for Plaintiff. However, Plaintiff's workspace and the office resources she was provided were markedly lesser than those provided to Plaintiff's Caucasian colleagues.

42.     Shortly after OUR's move in February 2018, Plaintiff consulted with University Human Resources Client Services Partner Tania Draghi, a Caucasian female, regarding Plaintiff's concerns about the discriminatory treatment she had experienced by both OUR and SCS leadership.

43.     After hearing Plaintiff's concerns, Ms. Draghi snidely remarked to Plaintiff, "Maybe you need to find a new job."

44.      Ms. Draghi did not open an investigation into Plaintiff's allegations; did not otherwise escalate Plaintiff's concerns; and did not provide Plaintiff with any offer of assistance to resolve them.

45.     On or about February 12, 2018, Defendant Soerensson became Plaintiff's immediate supervisor.

46.     On or about February 28, 2018, Defendant Soerensson requested that Plaintiff attend a "get to know you" strategy and planning meeting.

47.     When Plaintiff arrived at that meeting, she was ambushed by the presence of Georgetown's Deputy Registrar Amynah Mithani—an individual who was not on the original calendar invite sent to Plaintiff and a person with whom Plaintiff had only sporadic interaction.

48.     Defendant Soerensson and Ms. Mithani were inexplicably combative towards Plaintiff and made several unsupported allegations about her performance during this meeting.

49.     Prior to this meeting, Defendant Soerensson had only worked with Plaintiff a total of three (3) days. At the time, Ms. Mithani had no first-hand familiarity with Plaintiff's performance and/or work.

50.     During this meeting, Defendant Soerensson also questioned Plaintiff as to why Plaintiff had failed to bring her laptop. When Plaintiff attempted to explain that she had not been directed to bring her laptop, Defendant Soerensson interrupted Plaintiff, stating "HR told me to tell you that if you don't do everything I tell you to do, it's insubordination!"

51.     Prior to the February 28th meeting, Defendant Soerensson had no legitimate business justification to consult with Human Resources about Plaintiff's conduct or performance.

52.     After the February 28, 2018, meeting, Defendants Bianco and Soerensson required Plaintiff to make her calendar accessible to all OUR employees with whom Plaintiff worked. When issuing this directive, Defendants Bianco and Soerensson informed Plaintiff that the entire OUR team would be required to make their calendars accessible to other OUR employees.

53.     Plaintiff complied with this instruction; however, no other member of Plaintiff's OUR team—all of whom are Caucasian—was required to make their calendar accessible to Plaintiff or to other OUR employees.

54.     Defendants Bianco and Soerensson also required Plaintiff to provide them with detailed weekly memoranda about the matters on which she was working. No other Caucasian OUR employee was required to provide such weekly memoranda.

55.     Defendants Bianco and Soerensson systemically continued to remove Plaintiff's responsibilities and to promote Caucasian OUR employees into positions in which they were allowed to assume Plaintiff's former duties. Defendants Bianco and Soerensson also required Plaintiff to train these promoted Caucasian employees until said employees were adept in their new roles.

56.     Defendants Bianco and Soerensson removed student accounts from Plaintiff's realm of responsibility. Defendants Bianco and Soerensson made this decision even though Plaintiff had a collaborative working relationship with the Head of Student Accounts and he had expressed to

Defendants Bianco and Soerensson the added value generated by Plaintiff's work.

57.     On or about March 23, 2018, Defendant Soerensson, with approval from Defendant Bianco, issued a Letter of Warning against Plaintiff. This Letter of Warning was premised on acts of insubordination that purportedly occurred during Plaintiff's February 28th meeting with Defendant Soerensson and Ms. Mithani.

58.     The March 23, 2018, Letter of Warning was a discriminatory and retaliatory act by Defendants Bianco and Soerensson.

59.     When Plaintiff challenged the appropriateness of the March 23rd corrective action, Georgetown's Vice-President & Chief Operating Officer for the Main Campus informed Plaintiff that she should not have prepared a rebuttal to the unwarranted discipline and that her doing so now would follow her career and affect her opportunities for advancement with Defendant Georgetown.

60.     In the same conversation, Georgetown's Vice-President & Chief Operating Officer also informed that Plaintiff that he and the University remembered her previous 2014 and 2015 internal and external discrimination complaints against SCS and OUR and that Plaintiff was "just adding fuel to the fire."

61.     In keeping with the Vice-President & Chief Operating Officer's warning, Defendant Georgetown, separately and in concert with Defendants Bianco and Soerensson, has discriminated and retaliated against Plaintiff by failing to promote and/or to reassign her to positions for which she is more than qualified.

62.     Since raising her allegations of harassment and discrimination, Plaintiff has applied for approximately twenty-one (21) open internal positions at the University—each of which Plaintiff was more than qualified to hold.

63.     Despite being qualified for each of these open positions, Plaintiff has not been

selected for any of the open roles and, each time, has been passed over for lesser qualified Caucasian candidates.

64.     Defendants Bianco and Soerensson have participated in several of the interview panels when Plaintiff has interviewed for these open internal employment positions.

65.     Race discrimination and retaliation by Defendants Georgetown, Bianco and Soerensson were substantial factors, but for which Plaintiff would have been promoted and/or reassigned into one of these open internal employment positions.

66.     Defendants Georgetown, Bianco and Soerensson cannot proffer a legitimate non-discriminatory or non-retaliatory business justification for the failure to promote and/or to reassign Plaintiff into any of the twenty-one (21) positions for which Plaintiff applied.

67.     Further, the racially discriminatory employment practices of Defendant Georgetown were implemented and maintained by closed and irregular application, hiring and promotion processes; processes limited exclusively, as a practical matter, to preferences given to Caucasian employees; and application of disparate standards for African-American employees and applicants to employment as compared with non-minority employees and applicants.

68.     Defendant Georgetown, by and through its agents, has further perpetuated racially discriminatory employment practices by uneven and irregular assignment and promotion practices that have both a discriminatory impact and effect on African- American employees, including Plaintiff.

69.     On or about April 9, 2018, Defendant Georgetown, with input from Defendants Bianco and Soerensson, changed Plaintiff's business title from Associate Director of Student Records & Accounts to that of Assistant Registrar. This decision was communicated to Plaintiff on May 7, 2018.

70.     Plaintiff's new role as Assistant Registrar is not commensurate with Plaintiff's educational background and professional experience. This new role also has the consequential effect of hindering Plaintiff's opportunities for career advancement that Plaintiff—an individual with decades of relevant professional experience—might have at Defendant Georgetown or elsewhere in academia.

71.     After downgrading Plaintiff's role, Defendants Bianco and Soerensson also gave Plaintiff her performance review. This performance review was replete with material misstatement of fact; inconsistent and inaccurate conclusions; and fabricated feedback provided by SCS staff—including Defendant Canter—who have engaged in continual campaign of retaliatory conduct against Plaintiff.

72.     On or about May 19, 2018, Plaintiff learned that Defendants Bianco and Soerensson had removed her from the OUR Department's Senior Staff. Prior to her removal, Plaintiff had been a member of Senior Staff since her hire with Defendant Georgetown.

73.     As a result, Plaintiff is now being excluded from critical weekly Senior Staff meetings and her access to the Senior Staff computer drive has been effectively revoked.

74.     On May 21, 2018, Plaintiff filed a timely dually-filed charge with the Equal Employment Opportunity Commission and the District of Columbia Office of Human Rights, Charge No. 570-2018-02205, based on race discrimination and retaliation.

75.     On May 25, 2018, the Equal Employment Opportunity Commission physically mailed Plaintiff her Right-to-Sue Notice (dated May 24, 2018).

## COUNT ONE

### (Race Discrimination in Violation of Title VII against Defendant Georgetown)

76.     Plaintiff alleges and incorporates by reference the allegations contained in the

preceding paragraphs.

77.     Defendant Georgetown's conduct as alleged at length herein constitutes race discrimination in violation of Title VII. The stated reasons for Defendant Georgetown's conduct in this regard are not the true reasons for said conduct, but instead are pretextual explanations designed to hide Defendant Georgetown's discriminatory animus.

78.     As employees of Defendant Georgetown and at all times described herein, Defendants Bianco, Soerensson and Canter acted as agents of Defendant Georgetown and thus the racially discriminatory conduct of these individuals is imputable to Defendant Georgetown and sufficient to invoke liability under Title VII.

79.     As detailed herein, Plaintiff has been harmed by the acts and omissions of Defendant Georgetown and those of its agents, Defendants Bianco, Soerensson and Canter. This harm has manifested itself in the form of loss income, absence and loss of career advancement/opportunities, unwarranted discriminatory and retaliatory discipline and other tangible injuries resulting from daily employment in a racially hostile work environment.

80.     All of Defendant Georgetown's conduct as well as that of its agents, Defendants Bianco, Soerensson and Canter, was willful and intentional.

81.     Plaintiff has satisfied all procedural and administrative prerequisites to suit as set forth in Title VII.

82.     As a result of Defendant Georgetown's discrimination against Plaintiff on the basis of race, Plaintiff has suffered loss of income and emotional distress. The amount of Plaintiff's damages in this regard are to be proved at trial.

## **COUNT TWO**

### **(Retaliation in Violation of Title VII against Defendant Georgetown)**

83.     Plaintiff alleges and incorporates by reference the allegations contained in the preceding paragraphs.

84.     Defendant Georgetown's conduct as alleged at length herein constitutes retaliation in violation of Title VII. The stated reasons for Defendant Georgetown's conduct in this regard are not the true reasons for said conduct, but instead are pretextual explanations designed to hide Defendant Georgetown's retaliatory animus.

85.     As employees of Defendant Georgetown and at all times described herein, Defendants Bianco, Soerensson and Canter acted as agents of Defendant Georgetown and thus the retaliatory conduct of these individuals is imputable to Defendant Georgetown and sufficient to invoke liability under Title VII.

86.     As detailed herein, Plaintiff has been harmed by the retaliatory acts of Defendant Georgetown and those of its agents, Defendants Bianco, Soerensson and Canter. This harm has manifested itself in the form of loss income, absence and loss of career advancement/opportunities, unwarranted discriminatory and retaliatory discipline and other tangible injuries resulting from Defendants retaliatory behavior.

87.     All of Defendant Georgetown's conduct as well as that of its agents, Defendants Bianco, Soerensson and Canter, was willful and intentional.

88.     Plaintiff has satisfied all procedural and administrative prerequisites to suit as set forth in Title VII.

89.     As a result of Defendant Georgetown's retaliation against Plaintiff due to Plaintiff's having engaged in protected activity, Plaintiff has suffered loss of income and emotional distress. The amount of Plaintiff's damages in this regard are to be proved at trial.

## COUNT THREE

**(Race Discrimination and Retaliation in Violation of the DCRA against Defendant Georgetown)**

90.     Plaintiff alleges and incorporates by reference the allegations contained in the preceding paragraphs.

91.     Defendant Georgetown is and was, at all times pertinent thereto, an "employer" within the meaning of the DCHRA.

92.     Defendant Georgetown's conduct as alleged at length herein constitutes race discrimination and retaliatory conduct in violation of the DCHRA. The stated reasons for Defendant Georgetown's conduct in this regard are not the true reasons for said conduct, but instead are pretextual explanations designed to hide Defendant Georgetown's discriminatory and/or retaliatory animus.

93.     As employees of Defendant Georgetown and at all times described herein, Defendants Bianco, Soerensson and Canter acted as agents of Defendant Georgetown and thus the racially discriminatory and retaliatory conduct of these individuals is imputable to Defendant Georgetown and sufficient to invoke liability under the DCHRA.

94.     As detailed herein, Plaintiff has been harmed by the acts and omissions of Defendant Georgetown and those of its agents, Defendants Bianco, Soerensson and Canter. This harm has manifested itself in the form of loss income, absence and loss of career advancement/opportunities, unwarranted discriminatory and retaliatory discipline and other tangible injuries resulting from daily employment in a racially hostile and retaliatory work environment.

95.     All of Defendant Georgetown's conduct as well as that of its agents, Defendants Bianco, Soerensson and Canter, was willful and intentional.

96.     Plaintiff has satisfied all procedural and administrative prerequisites to suit as set

forth in the DCHRA.

97.     As a result of Defendant Georgetown's discrimination and retaliation against
Plaintiff, Plaintiff has suffered loss of income and emotional distress. The amount of Plaintiff's
damages in this regard are to be proved at trial.

## COUNT FOUR
### (Race Discrimination and Retaliation in Violation of the DCRA against Defendant Bianco)

98.     Plaintiff alleges and incorporates by reference the allegations contained in the
preceding paragraphs.

99.     Defendant Bianco is and was, at all times pertinent thereto, an "employer" within the
meaning of the DCHRA.

100.     Defendant Bianco's conduct as alleged at length herein constitutes race
discrimination and retaliatory conduct in violation of the DCHRA and is sufficient to establish that
Defendant Bianco, in her individual capacity as a high-level employee, actively aided and abetted in
discriminatory and retaliatory practices while in Defendant Georgetown's employ. The stated reasons
for Defendant Bianco's conduct in this regard are not the true reasons for said conduct, but instead
are pretextual explanations designed to hide Defendant Bianco's discriminatory and/or retaliatory
animus.

101.     As detailed herein, Plaintiff has been harmed by the acts and omissions of Defendant
Bianco. This harm has manifested itself in the form of loss income, absence and loss of career
advancement/opportunities, unwarranted discriminatory and retaliatory discipline and other tangible
injuries resulting from daily employment in a racially hostile and retaliatory work environment.

102.     All of Defendant Bianco's conduct was willful and intentional.

103.     Plaintiff has satisfied all procedural and administrative prerequisites to suit as set

forth in the DCHRA.

104.     As a result of Defendant Bianco's discrimination and retaliation against Plaintiff,

Plaintiff has suffered loss of income and emotional distress. The amount of Plaintiff's damages in

this regard are to be proved at trial.

## COUNT FIVE
### (Race Discrimination and Retaliation in Violation of the DCRA against Defendant Soerensson)

105.     Plaintiff alleges and incorporates by reference the allegations contained in the

preceding paragraphs.

106.     Defendant Soerensson is and was, at all times pertinent thereto, an "employer" within

the meaning of the DCHRA.

107.     Defendant Soerensson's conduct as alleged at length herein constitutes race

discrimination and retaliatory conduct in violation of the DCHRA and is sufficient to establish that

Defendant Soerensson, in her individual capacity as a high-level employee, actively aided and

abetted in discriminatory and retaliatory practices while in Defendant Georgetown's employ. The

stated reasons for Defendant Soerensson's conduct in this regard are not the true reasons for said

conduct, but instead are pretextual explanations designed to hide Defendant Soerensson's

discriminatory and/or retaliatory animus.

108.     As detailed herein, Plaintiff has been harmed by the acts and omissions of Defendant

Soerensson. This harm has manifested itself in the form of loss income, absence and loss of career

advancement/opportunities, unwarranted discriminatory and retaliatory discipline and other tangible

injuries resulting from daily employment in a racially hostile and retaliatory work environment.

109.     All of Defendant Soerensson's conduct was willful and intentional.

110.     As a result of Defendant Soerensson's discrimination and retaliation against Plaintiff,

Plaintiff has suffered loss of income and emotional distress. The amount of Plaintiff's damages in this regard are to be proved at trial.

**COUNT SIX**
**(Race Discrimination and Retaliation in Violation of the DCRA against Defendant Canter)**

111.    Plaintiff alleges and incorporates by reference the allegations contained in the preceding paragraphs.

112.    Defendant Canter is and was, at all times pertinent thereto, an "employer" within the meaning of the DCHRA.

113.    Defendant Canter's conduct as alleged at length herein constitutes race discrimination and retaliatory conduct in violation of the DCHRA and is sufficient to establish that Defendant Canter, in his individual capacity as a high-level employee, actively aided and abetted in discriminatory and retaliatory practices while in Defendant Georgetown's employ. The stated reasons for Defendant Canter's conduct in this regard are not the true reasons for said conduct, but instead are pretextual explanations designed to hide Defendant Canter's discriminatory and/or retaliatory animus.

114.    As detailed herein, Plaintiff has been harmed by the acts and omissions of Defendant Canter. This harm has manifested itself in the form of loss income, absence and loss of career advancement/opportunities, unwarranted discriminatory and other retaliatory adverse employment actions and other tangible injuries resulting from daily employment in a racially hostile and retaliatory work environment.

115.    All of Defendant Canter's conduct was willful and intentional.

116.    As a result of Defendant Canter's discrimination and retaliation against Plaintiff, Plaintiff has suffered loss of income and emotional distress. The amount of Plaintiff's damages in

this regard are to be proved at trial.

## COUNT SEVEN

### (Intentional Infliction of Emotional Distress Against All Defendants)

117.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

118.    Defendants' racially discriminatory and retaliatory conduct, as alleged at length herein, was extreme and outrageous.

119.    Defendants' racially discriminatory and retaliatory conduct, as alleged at length herein, has caused Plaintiff to suffer severe emotional distress.

120.    Defendants knew and intended that Plaintiff would suffer severe emotional distress as a result of their willful and purposeful racially discriminatory and retaliatory conduct.

121.    As a result of Defendants' purposeful and willful racially discriminatory and retaliatory conduct, as set forth herein and in Count Seven, Plaintiff seeks compensatory damages in an amount to be proved at trial.

## COUNT EIGHT

### (Punitive Damages against Defendant Georgetown)

122.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

123.    The racially discriminatory and retaliatory conduct by Defendant Georgetown, as well as that of its agents, Defendants Bianco, Soerensson and Canter and, as alleged at length herein, was outrageous and/or undertaken with reckless indifference to the civil and legal rights of Plaintiff, which includes Plaintiff's legal right to work in an employment environment free from discrimination and/or to engage in protected legal activity without reprisal.

124.    As such, Plaintiff is entitled to an award of punitive damages against Defendant

Georgetown in the amount of $200,000.00 or in such other amount allowable by law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Tammi Coakley-Simelton seeks judgment and prays for the following

relief:

a.      For Defendant Georgetown, the sum of $250,000.00 for compensatory damages

suffered as a result of Defendant's racially discriminatory and retaliatory conduct;

b.      For individual Defendant Bianco, the sum of $150,000.00 for compensatory damages

suffered as a result of Defendant's racially discriminatory and retaliatory conduct;

c.      For individual Defendant Soerensson, the sum of $150,000.00 for compensatory

damages suffered as a result of Defendant's racially discriminatory and retaliatory conduct;

d.      For individual Defendant Canter, the sum of $150,000.00 for compensatory damages

suffered as a result of Defendant's racially discriminatory and retaliatory conduct;

e.      For Plaintiff's Intentional Infliction of Emotional Distress Claim against all

Defendants, the collective sum of $100,000.00;

f.      For exemplary and punitive damages against Defendant Georgetown, the sum of

$200,000.00 or in such other amount allowable by law;

g.      For interest;

h.      For costs of suit and attorneys' fees; and

i.      For such other and further relief as the Court may deem just, proper, and appropriate.

### Demand for Jury

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Tammi Coakley-

Simelton demands trial by jury for all the issues pleaded herein so triable.

21

Dated: August 27, 2018                         Respectfully submitted,

                                       _____/s/  Cheryl R. Hankerson_____
                                       Cheryl R. Hankerson, Esquire, (#465747)
                                       The Shanahan Law Firm LLC
                                       1029 Vermont Avenue, NW
                                       Suite 610
                                       Washington, D.C. 20005-3517
                                       Telephone: 202.785.2940
                                       Facsimile: 202.785.2941
                                       Email: chankerson@shanahanfirm.com